Brad Love Sneed v. Commissioner.
Sneed v. Commissioner
Docket No. 27716.
United States Tax Court
1953 Tax Ct. Memo LEXIS 199; 12 T.C.M. (CCH) 711; T.C.M. (RIA) 53223; June 23, 1953
*199 1. Petitioner was an annuitant beneficiary of her deceased husband's estate in the amount of $15,000 per annum, the residue of the income of the estate being distributable to the deceased's daughter. A Texas court of competent jurisdiction has held that the said $15,000 payable to petitioner was payable only out of income of the estate. Held, that the annuity payments to petitioner were income taxable to her. Rationale of Estate of J. T. Sneed, Jr., 17 T.C. 1344, followed. 2. Part of the income of the estate during each of the taxable years 1942 and 1943 was from depletable property belonging to the estate. There was no provision in the trust instrument directing whether the trustee or the beneficiaries be allowed the depletion deduction. Petitioner has not shown what the trust income was for the years in question. Neither has she shown what portion thereof was from depletable property, nor the amount of the depletion deduction allowable thereon. Held, that petitioner, being an income beneficiary, is entitled to an apportionment of the depletion allowance as indicated by her proportion of the trust income. Amount determined by application of rule of Cohan v. Commissioner, 39 Fed. (2d) 540.
*200 3. During the administration of the estate, petitioner's share of income earned by a community-owned cattle business was $9,129.38 in 1940, and $26,008.67 in 1941. Held, that such income is taxable to petitioner. Estate of J. T. Sneed, Jr., Deceased, supra, followed. 4. Held, that certain expenditures for legal services were paid by petitioner for the production or collection of income, and are deductible. Tom B. Rhodes, Jr., Esq., for the petitioner. F. S. Gettle, Esq., and M. Clifton Maxwell, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: Respondent determined deficiencies in income tax against petitioner for the years 1940, 1941, and 1943, in the respective *201 amounts of $2,784.81, $1,523.70 and $5,162.13. Petitioner claims to have overpaid her taxes and to be entitled to refunds for the years involved. Some issues relate to the year 1942, but are to be considered with the deficiency for 1943 because of the forgiveness feature of the Current Tax Payment Act of 1943. The issues for determination are (1) whether the payments of $3,125 made by the estate of J. T. Sneed, Jr., deceased, to petitioner during the period October 15, 1940 to December 31, 1940, and $15,000 during 1941, pursuant to a codicil attached to the will of J. T. Sneed, Jr., are includible in income of petitioner for the years 1940 and 1941, respectively; (2) whether petitioner is entitled to deduct statutory percentage depletion on a portion of the $15,000 paid to her, pursuant to a codicil attached to the will of J. T. Sneed, Jr., in each of the years 1942 and 1943, by the J. T. Sneed, Jr., trust estate; (3) whether the amounts of $9,129.38 and $26,008.67, representing petitioner's share of income earned by a community-owned cattle business while her deceased husband's estate was in the process of administration, are taxable to petitioner in the years 1940 and 1941, respectively; *202 and (4) whether petitioner is entitled to deduct $1,111 in the year 1942 for legal fees and expenses paid in 1942. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Petitioner is an individual and resides in Amarillo, Texas. She filed her income tax returns for the years involved with the collector of internal revenue for the second district of Texas. Amended returns were also filed for the years 1942 and 1943. Her husband, J. T. Sneed, Jr., died testate on October 15, 1940. The last will and testament of J. T. Sneed, Jr., with codicil attached, was duly admitted to probate court in the County Court of Potter County, Texas, on November 4, 1940, and the executors named therein were thereafter duly qualified as such. The estate of J. T. Sneed, Jr., deceased, was in administration during the years 1940, 1941 and up to September 24, 1942. Prior to the marriage of J. T. Sneed, Jr., to petitioner and after the death of his former wife, Zella Sneed, J. T. Sneed, Jr., executed a will dated October 5, 1936, which contained the following: "FOURTH: "1. I desire and direct that my Executors shall as rapidly as can be done after my death, in the *203 exercise of their sound discretion, convert the personal property of my estate into cash or into bonds, and other securities of such nature as they shall deem advisable. All such cash, bonds and/or securities, as well as all moneys derived from royalties, rentals and leases of oil and gas lands, rentals, lease and sale of lands, or from whatever source obtained which shall come into the hands of my said Executors, shall be held, managed, invested and reinvested by them, and after payment of taxes, fixed charges, operating expenses and the expenses of administration, my said Executors shall then pay over the net income from my said estate to my daughter, Elizabeth Sneed Pool during her lifetime, should she survive me. * * *
"SIXTH: "1. I hereby give to the Executors and Trustees herein named full and complete right and unrestricted authority to hold, manage, operate, lease, exchange, mortgage and/or sell, all or any portion of the lands or personal property belonging to my estate, for such price and upon such terms as they shall deem proper and to the best interests of my said estate. "2. As to any of said lands which are already proved or hereafter are considered to be oil *204 and/or gas bearing, or to contain other minerals, I hereby give to my said Executors full and complete right and unrestricted authority to hold, manage, operate, drill, lease, exchange, mortgage and/or sell said lands, in whole or in part, in fee simple, or as to surface rights, or as to leasehold and/or royalty interests therein, as they shall deem proper and to the best interest of my estate, and my Executors shall be the sole judge of such matters. * * *" On November 16, 1938, after his marriage to petitioner, J. T. Sneed, Jr., executed a codicil to his will, in which appear the following provisions: "I do hereby give and bequeath to my beloved wife, BRAD LOVE SNEED, should she survive me, and for so long as she lives and remains my widow unmarried, in cash the sum of Fifteen Thousand ($15,000.00) Dollars per year, to be paid to her by my Executors and Trustees out of my estate as a fixed charge and before the distribution and payment of the net income of my estate as in my said Will provided. * * *
"I desire and direct that the bequests hereinabove provided shall be paid out of my estate from time to time and in the amounts herein provided, as a fixed charge and before *205 the distribution and payment of net income of my estate as provided in my said will of October 5, 1936 hereto attached; and it is my desire, and I here direct, that this Codicil be annexed to and made a part of my said Will of October 5, 1936 to all intents and purposes." In compliance with the terms of the will and codicil the executors paid to petitioner the sum of $3,125 during the period October 15, 1940 through December 31, 1940, and the sum of $15,000 for each of the years 1941, 1942, and 1943. For each of the years the estate had sufficient earnings out of which to pay the respective annuities. Petitioner reported the annuities in her respective income tax returns as income from fiduciaries under the codicil to the will. She also reported in her 1940 return the amounts of $9,129.38 and $8,233.01. The amount of $9,129.38 was reported as income from the community-owned cattle business for the period from October 15, 1940 to December 31, 1940, and was determined as follows: Estate of J. T. Sneed, Jr., Deceased,
and Brad Love Sneed
Income from Business
October 15 to December 31, 1940
Cattle Sales
$116,009.67
Cost of Cattle Sold: Beginning Inventory
$255,529.50
Less Ending Inventory
190,482.50
65,047.00
Gross Profit on Cattle
$ 50,962.67
Expenses: Wage
$ 3,034.70
Feed
12,692.30
Ranch Expense
317.15
Grass Lease
927.63
Repairs
47.19
Office Expense
677.81
Freight
982.28
Advertising
9.80
Automobile and Truck
640.27
Ranch Groceries
413.56
Commissions
556.00
Depreciation
1,681.82
21,980.51
Net Profit
$ 28,982.16
Distribution of Profit: Brad Love Sneed - 31.5%
$ 9,129.38
Estate of J. T. Sneed, Jr., De-
ceased - 68.5%
19,852.78
Total
$28,982.16
*206 The amount of $8,233.01 was reported as income from oil and gas rentals for the calendar year 1940. For the period from October 15 to December 31, 1940, the estate received oil and gas rentals of $350, of which amount $320 was allocated to and reported as income by petitioner in the above total, and $30 was reported as income by the estate of J. T. Sneed, Jr. Petitioner also reported in her 1941 return the amount of $26,008.67 as her part of the income from the community-owned cattle business for 1941. The estate did not include the amounts of $9,129.38 and $26,008.67 as income for the years 1940 and 1941, respectively. It deducted the amounts of $3,125 and $15,000 as income distributable to beneficiaries for the years 1940 and 1941, respectively. In the conduct of the ranching operations no attempt was made to segregate the community cattle from the cattle which had been the separate property of J. T. Sneed, Jr. Petitioner and the independent executors of the estate of J. T. Sneed, Jr., deceased, entered into articles of agreement on September 24, 1942, providing for the final settlement of the community estate. Paragraph 7 of the agreement states as follows: "7. After *207 deducting all community debts and making due and proper allowances, and excluding the property described in Paragraphs 3, 4, 5, and 6 above, there is now community property consisting of cash, accounts receivable, notes receivable, cattle, real estate, improvements, office furniture and fixtures, farm implements, automobiles and trucks, horses, mules, corporation stock, etc. The parties hereto are familiar with and know the nature, kind, character and extent of such community property, and have satisfied themselves respectively as to its value, and it has been determined and it is now agreed that said community property is of the value of One Hundred Ninety-nine Thousand, Five Hundred Thirty-four and 65/100 Dollars ($199,534.65), and that First Party [Brad Love Sneed] as survivor in the community owns an undivided one-half interest in said property. NOW, THEREFORE, for a consideration of Ninety-Nine Thousand, Seven Hundred sixty-seven and 32/100 Dollars ($99,767.32) in cash, paid to First Party by Second Parties [Independent Executors of the Estate of J. T. Sneed, Jr.] in their representative capacities, the receipt whereof is hereby acknowledged, First Party does by these presents *208 bargain, sell, transfer, grant, convey and assign to Second Parties in their representative capacities, all of her right, title, interest and claim in and to any and all of the said community estate, including the following described real estate: [Description of Real Estate] all located in Moore County, Texas." After the purchase of petitioner's interest in the estate and the settlement of all her claims against the estate, the executors, as testamentary trustees, managed the J. T. Sneed, Jr., trust estate. Prior to the above sale and settlement, the only sums ever paid to petitioner by the executors were those paid in accordance with the $15,000 annual bequest as provided in the codicil. In her 1942 return petitioner reported the amount of $14,213.85 as income from ranch operations of the estate. Petitioner computed that amount, on a schedule in the return, in the following manner: Income
Total
Petitioner
Estate
Cattle Sales
$26,964.01
$ 5,235
$21,729.01
Sale by petitioner to estate on Sept 24
48,885.00
48,885
Total Sales
54,120
Cost of Cattle Sold
Beginning Inventory
82,930
31,872
51,058
Purchase from petitioner
48,885
48,885
Less: Cost of Cattle Sold
31,872
Gross profit
22,248
Expenses
Expenses incurred prior to 9/24 allocated on
basis of $12.793 per head of cattle owned,
Pet'r 628 head; Estate 924 head
19,855.08
8,034.15
11,820.93
Total expenses
8,034.15
Net Profit From Ranch
14,213.85
*209 In May 1945, petitioner filed an amended return for 1942 in which she showed her net income to be $13,057.60 rather than $23,607.88 as originally reported. In arriving at the adjusted net income she included as additional income "Bad Debts Disallowed" and "Depletion Disallowed on Lease Rentals" and claimed Less: Non-taxable income-profit from
$14,213.85
ranching (This was a part of
the settlement of taxpayer's
community interest in the
Estate of J. T. Sneed, Jr.,
deceased, under contract dated
Sept. 24, 1942, and is not con-
sidered income under G.C.M.
22034, following the Weigel
case.)
Additional Deductions: Attorney fees paid Sidney Sam-
$ 4,111.11
uels 10-15-42
Adjusted net income
$13,057.60
Respondent in a statement attached to the notice of deficiency for the taxable year ended December 31, 1942, made ADJUSTMENTS TO NET INCOME
Net income as disclosed by return
$23,607.88
Unallowable Deductions and Additional Income: (a) Depletion Disallowed
$ 145.42
(b) Bad Debts
8,460.98
(c) Distribution from Estate of J. T. Sneed, Jr.
14,213.85
Total Additions
$22,820.25
Additional Deductions: (d) Income from ranching reported
14,213.85
Net Addition
8,606.40
Your Net Income Adjusted
$32,214.28
Explanation of Adjustments
(c) Distribution from Estate of J. T. Sneed, Jr.
$14,213.85
(d) Net Profit from Ranch
14,213.85
*210 On your return you reported the amount of $14,213.85 as net profit from ranch. It is held that income from operation of the ranch constitutes income of the Estate of J. T. Sneed, Jr. However, it is further held that the amount of $14,213.85, representing your community share of net income from operation of the ranch, was distributed to you in 1942 by the Estate of J. T. Sneed, Jr., and that said distribution constitutes taxable income to you. Therefore, the amount of $14,213.85 is added to your income as a distribution from the Estate of J. T. Sneed, Jr., and the amount reported by you as net profit from ranch is eliminated. In October 1941, petitioner engaged a Fort Worth law firm to represent her in litigation involving the estate and to investigate her community interest and "to see to its ascertainment and due recognition in respect to property and money." Through the efforts of a member of the firm the settlement agreement, referred to above, was executed. Petitioner, on October 15, 1942, paid by check $4,111 for "Legal Services" of which the sum of $1,000 was for the legal services rendered in negotiating the sale and settlement agreement and $111 was for the attorney's expenses *211 in connection therewith. The expenditures resulted in the receipt of additional income by petitioner. Petitioner's proportionate share of the depletion allowance on the trust property in each of the years 1942 and 1943 was $100. Opinion Petitioner concedes that the annuity she received from the estate in the years 1942 and 1943 was income taxable to her, but she contends that the annuity paid to her in 1940 and 1941 was not income taxable to her. It is her position that prior to the change in the statute in 1942 [1] the applicable law prevented the annuity from being taxable to the annuitant for, as a "fixed charge" under the provisions of the will and codicil, it was a charge against either the corpus or income of the estate and therefore the annuity was not taxable to her under the authorities, Burnet v. Whitehouse, 283 U.S. 148 (1931) and Helvering v. Pardee, et al., 290 U.S. 365 (1933). *212 The difficulty with petitioner's position is that this Court has already interpreted the provisions of the will and codicil in question adversely to the contention now being advanced. In Estate of J. T. Sneed, Jr., 17 T.C. 1344, it was held that the estate was entitled to deduct, as distributable income, the amounts distributed to petitioner herein in the years 1940 and 1941. There, respondent argued, as does petitioner here, that the annual payment to the widow "was payable out of corpus, if necessary, and, therefore, is not deductible as a distribution of income" and the estate contended, as respondent now contends, that "the intent of the testator was to have payment made only out of income." We stated on page 1347, "A court of competent jurisdiction in Texas has held that the amount is payable out of income of the estate and could not be charged against corpus. Sneed v. Pool, 228 S.W. (2d) 913. That decision is followed in the disposition of this point." Petitioner would have us ignore the Texas determination as well as our own and arrive at a decision in her favor. We see no merit in her contention, but to the contrary, we are of the opinion that *213 this Court's earlier decision was correct, and should be followed in the disposition of this issue. The annuities received by petitioner from the estate in 1940 and 1941 are income taxable to her. Petitioner concedes that she is not entitled to depletion deduction on portions of the annuities derived from oil and gas royalties and bonuses paid to her in the years 1940 and 1941, during which time the estate was in the process of administration. In that connection see Kathryn Titus MacMurray, 16 T.C. 616. As to 1942 and 1943, however, she contends that under section 23 (m) of the Internal Revenue Code, [2] she is entitled to depletion deductions on such portions of the annuities as were paid from income derived from oil and gas royalties and bonuses. *214 Respondent contends that she is not entitled to the deductions for the reason that she is not the owner of an economic interest in mineral deposits. Whatever the legal niceties of the question posed, it is unnecessary, in our opinion, to decide it. The facts definitely indicate that the trust did own such interests and the respondent does not contend otherwise. And, in section 23 (m), supra, it is specifically provided that "In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each." There are no provisions in the trust instrument that cover "depletion" or apportion the allowable deduction between income beneficiaries. In such event the deduction is to be apportioned "on the basis of the trust income allocable to each." We have heretofore held that petitioner was an income beneficiary for the years 1940 and 1941 while the estate of J. T. Sneed, Jr., was in process of administration, and the facts show that the basis for payment by the *215 trustees in 1942 and 1943 was the same as for the preceding years. It had been held by a Texas court of competent jurisdiction that the amount to be paid to petitioner was payable only out of income of the estate. The fact that the amount to be paid to petitioner was a limited amount of $15,000 and the rest of the income went to a residuary income beneficiary did not make her any the less an income beneficiary within the meaning of section 23 (m), supra. See and compare Sada G. Wilson Blake, 39 B.T.A. 793. As petitioner is an income beneficiary and the pertinent provisions of the trust instrument do not direct whether the trustee or the beneficiaries shall be allowed the depletion deduction, she is entitled to an apportionment of the depletion allowance. William Fleming, Trustee, 43 B.T.A. 229, affd. (5 C.A., 1941), 121 Fed. (2d) 7. She is entitled, however, to only such portion of the depletion allowance as is indicated by her proportion of the trust income. Sada G. Wilson Blake, supra.
There is no evidence with respect to the income received by the trust in 1942 and 1943, nor as to what part of the income was derived from depletable *216 assets. Petitioner suggests that the tax returns of the trust for those years revealed the respective sources of the trust income and that an attempt was made to produce the returns but they had been destroyed by the internal revenue collector and were not available. She then urges the Court to apply the rule of Cohan v. Commissioner, 39 Fed. (2d) 540, and find that the income of the trust estate for each of the years 1942 and 1943 came from the same sources as the income in the period October 15, 1940 through December 31, 1941, in approximately the same ratio. On the basis that during the latter period, 62.1 per cent of the income of the estate consisted of oil and gas royalties and bonuses and 37.9 per cent consisted of other income, it is urged by her that for both 1942 and 1943, 62.1 per cent of $15,000, or $9,315, was paid to her out of oil and gas royalties and bonuses and is income received by her with respect to which she is entitled to deduct 27 1/2 per cent depletion. Petitioner has not explained why she has not adduced the evidence relating to the income of the trust in 1942 and 1943, on which the trust's returns were based. The returns, of course, would not *217 be the best evidence and the fact that the returns were destroyed is not indicative that other and better evidence was not available. Respondent does not claim that the trust did not have income in 1942 and 1943 from oil and gas royalties and bonuses. His position is that "petitioner has offered no proof showing any relationship between the amounts paid by the estate to petitioner and the amount of royalties, bonuses and other income subject to depletion which was received by the estate." In such posture of the case we should assume, we think, that some portion of the annuities received by petitioner in 1942 and 1943 was derived from depletable assets of the trust, and in the absence of proof with respect thereto the Cohan rule is applicable not only as to the source of the trust's income as petitioner argues, but also with respect to the ratable interests of petitioner and the residuary income beneficiary in the trust's income. It thus appears that after the rule is applied in arriving at the amount and source of income received by the trust, the rule must again be applied in order to determine the percentage of the allowance that is allocable to the respective interests. We do *218 not know, however, whether much or little of the trust income for the years in question was from oil, nor do we know whether much or little of such trust income was required in payment of the $15,000 annuity to petitioner. In short, the amount of the depletion deduction allowable in respect of the income from the depletable property of the trust estate has not been shown. Bearing heavily against petitioner because she has failed to meet her burden of proof as to amount, but determining the matter as best we can, from the evidence before us which merely is that some amount of trust income was from depletable property, we have concluded and found as a fact that petitioner has an allowable depletion deduction in the amount of $100 for each of the taxable years 1942 and 1943. Petitioner relies on Barbour v. Commissioner, 89 Fed. (2d) 474, as support for her contention that she is not taxable on her share of the income from the community-owned cattle business received by the estate in 1940 and 1941, during which time the estate was in process of administration. The Court of Appeals for the Fifth Circuit reversed this Court in the Barbour case, holding that none of the income *219 from community property received by an estate in the course of its administration was taxable to the surviving spouse. Subsequently, in Estate of E. A. Blackburn, 11 T.C. 623, we followed the Barbour case, but were also reversed by the Court of Appeals for the Fifth Circuit, in an opinion reported at 180 Fed. (2d) 952. Thereafter, in Estate of J. T. Sneed, Jr., supra, the same estate as that herein and involving the same income, the question was whether the estate must report all of the income from the community property, or whether it should report only one-half, leaving the other half to be reported by the surviving spouse, the petitioner herein. After discussing the Barbour, Blackburn and other case, we said, at page 1346 of our opinion: "It would now appear that the Fifth Circuit is holding, just as this tribunal had held prior to the Barbour case, that one-half of the income from community property continues to be taxable to the surviving spouse, and the estate of the deceased spouse is taxable only on onehalf during the period of administration of that estate, regardless of which spouse survives. * * * We hold that the petitioner in this *220 case, the estate of the deceased husband, is taxable on only onehalf of the community income for the taxable periods involved herein, believing not only that we are following the latest decisions of the Court of Appeals for the Fifth Circuit but, also, that the taxpayer's position is sound." Applying here what we said in that case, we hold that petitioner is taxable on her share of the income from the community-owned cattle business in 1940 and 1941 and that she did not err in reporting such income in her returns for those years. The final issue relates to the deductibility of $1,111 expended for legal services. Petitioner claims the deduction under section 23 (a) (2) of the Internal Revenue Code, [3] which provides for deduction of non-trade or non-business expenses. More specifically, our question is whether petitioner paid ordinary and necessary expenses during 1942 for the production or collection of income. She does not now contend that she is entitled to a deduction of $3,000 expended for legal services rendered in connection with litigation in which she and the estate and others had been involved. *221 It appears from the record and we have found as a fact that the services rendered petitioner by her attorney resulted in a realization of additional income to her. For such services she expended $1,111, consisting of $1,000 fee and $111 for the attorney's travel and other expenses. We are of the opinion this was a reasonable expenditure and petitioner is entitled to the deduction claimed. Decision will be entered under Rule 50. Footnotes
1. SEC. 162. NET INCOME. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that - * * *
(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year; (c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary. Internal Revenue Code (1939), applicable to the years 1940 and 1941.↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(m) Depletion. In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. * * * In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.↩
3. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - * * *
(2) Non-trade or Non-business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩