Elizabeth S. Robinett v. Commissioner.
Robinett v. Commissioner
Docket No. 86908.
United States Tax Court
T.C. Memo 1962-103; 1962 Tax Ct. Memo LEXIS 204; 21 T.C.M. (CCH) 568; T.C.M. (RIA) 62103; 16 Oil & Gas Rep. 934; April 30, 1962
Dorothy Ann Kinney, Esq., for the petitioner. David E. Mills, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1955, 1956, and 1957 in the amounts of $107,743.31, $73,704.99, and $76,752.09, respectively. The issue for decision is whether the total net income of the trust estate of J. T. Sneed, Jr., deceased, was distributable to petitioner during the years 1955, 1956, and 1957 or only that portion of such income as did not consist of royalties, delay rentals, and other rental income from lands owned by decedent. The issue raised in the petition with respect to the depletion allowance in the computation of the net income of the trust estate has been conceded by respondent. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner is an individual residing in Amarillo, Texas. She filed *206 joint income tax returns with her husband, Frank A. Robinett, for the taxable years 1955, 1956, and 1957 with the district director of internal revenue at Dallas, Texas. Respondent's notice of deficiency was issued jointly to petitioner and her husband, but the petition herein was filed only by Elizabeth S. Robinett. Petitioner elected on October 22, 1959, in compliance with statutory provisions of the State of Texas, to have the sole management, control and disposition of her separate property including the right to sue and be sued thereon without joinder of her husband. Petitioner, who has at various times used the name of Elizabeth Sneed Pool and Elizabeth Sneed Pool Robinett, as well as the name in which the petition herein was filed, is the only child of J. T. Sneed, Jr., and his former wife, Zella Sneed. J. T. Sneed, Jr., hereinafter referred to as decedent, a resident of Amarillo, Texas, died testate on October 15, 1940. Decedent executed a will on October 5, 1936, after the death on September 17, 1935, of his former wife, Zella Sneed, but prior to his marriage to Brad Love Sneed. This will, after providing for the bequest to petitioner of the family residence and household *207 goods, provided that the residue of his estate including the community estate vested in him under the will of his deceased wife, Zella, should pass to and vest in trust in his executors to be held, administered, and paid to the devisees and legatees thereafter named subject to the conditions set forth in the will. The fourth paragraph of this will provided in part: 1. I desire and direct that my Executors shall as rapidly as can be done after my death, in the exercise of their sound discretion, convert the personal property of my estate into cash or into bonds, and other securities of such nature as they shall deem advisable. All such cash, bonds and/or securities, as well as all moneys derived from royalties, rentals and leases of oil and gas lands, rentals, lease and sale of lands, or from whatever source obtained which shall come into the hands of my said Executors, shall be held, managed, invested and reinvested by them, and after payment of taxes, fixed charges, operating expenses and the expenses of administration, my said Executors shall then pay over the net income from my said estate to my daughter, Elizabeth Sneed Pool during her lifetime, should she survive me. This *208 paragraph further provided for the disposition of the income in the event petitioner predeceased decedent. The will further provided for the disposition of the estate upon petitioner's death, to her child or children if such child or children had reached majority, the method of handling the estate if upon petitioner's death her child or children had not attained the age of 21 years, and disposition of the estate in the event petitioner left no child or children surviving her. The sixth paragraph of the will provided in part as follows: 1. I hereby give to the Executors and Trustees herein named full and complete right and unrestricted authority to hold, manage, operate, lease, exchange, mortgage and/or sell, all or any portion of the lands or personal property belonging to my estate, for such price and upon such terms as they shall deem proper and to the best interests of my said estate. 2. As to any of said lands which are already proven or hereafter are considered to be oil and/or gas bearing, or to contain other minerals, I hereby give to my said Executors full and complete right and unrestricted authority to hold, manage, operate, drill, lease, exchange, mortgage and/or sell *209 said lands, in whole or in part, in fee simple, or as to surface rights, or as to leasehold and/or royalty interests therein, as they shall deem proper and to the best interest of my estate, and my executors shall be the sole judge of such matters. The seventh paragraph named as executors Terry Thompson, L. J. Haile, petitioner, and H. C. Pipkin, with a provision that decedent's grandson, Joseph Harold Pool, should become an executor after he reached the age of 21 years and after any of the original executors named had died, become incapacitated, or failed or refused to act as executors. L. J. Haile and H. C. Pipkin were not related to decedent or petitioner. Terry Thompson was decedent's brother-in-law. H. C. Pipkin, who died in 1949, was an attorney residing in Amarillo, Texas, who had prepared the will and also a codicil thereto executed by decedent on November 16, 1938, after his marriage to Brad Love Sneed. The codicil to decedent's will provided in part as follows: I do hereby give and bequeath to my beloved wife, BRAD LOVE SNEED, should she survive me, and for so long as she lives and remains my widow and unmarried, in cash the sum of Fifteen Thousand ($15,000.00) Dollars *210 per year, to be paid to her by my Executors and Trustees out of my estate as a fixed charge and before the distribution and payment of the net income of my estate as in my said Will provided. Decedent's will with codicil annexed was admitted to probate on November 4, 1940. The executors named therein qualified as executors. Thompson served as an executor until his resignation in 1942 and Pipkin, until his death in 1949. Petitioner and Haile served until administration of the estate ended in 1950 and became the trustees when the operation of decedent's estate as a trust began in 1950. Joseph Harold Pool, petitioner's only child, qualified as a trustee under decedent's will on May 7, 1955, when he became 21 years of age. Pool, Haile and petitioner were the trustees of the trust estate during the taxable years here involved. The approximate value of the estate at the date of decedent's death was $800,000. The estate had substantial indebtedness consisting of decedent's personal loans and indebtedness against his lands and cattle which indebtednesses were not completely liquidated until 1950. The executors and trustees from the inception of the estate in 1940 have interpreted decedent's *211 will as providing for the retention by the estate or trust, for management and investment, of proceeds from the directed conversion of personalty and all proceeds received from decedent's lands owned by him at the date of his death, whether from royalties, rentals, leases, sales, or whatever source. Under the interpretation of the executors and trustees, only the income from the investment of the proceeds from the conversion of personalty and receipts from the land owned at the date of decedent's death is distributable income. Distributions were made to petitioner during the administration of the estate of the income thereof regarded by the executors as distributable and similar distributions have been made since the inception of the trust. During the taxable years here involved no distributions of income from the trust estate were made to petitioner, and the only income reported by petitioner during these years from the trust estate was an item in each year of $12,500 designated in the year 1955 as "Executor's Fee" and in the years 1956 and 1957 as "Trustee's Fee." The trust estate of J. T. Sneed, Jr., filed income tax returns for each of the years ended June 30, 1955, 1956, and *212 1957, reporting taxable income and tax thereon as follows: Years
Taxable Income
Taxes
6/30/55
$128,445.27
$92,141.03
6/30/56
93,521.56
58,913.15
6/30/57
99,591.16
61,819.11
Under the trustees' interpretation of decedent's will, the trust estate, for its fiscal years ended June 30, 1955, 1956, and 1957, had income and expenses as follows: Designation
Distributable Income
Corpus
Total Income
Fiscal Year ended June 30, 1955
Total income
$ 97,860.56
$286,307.26
$384,167.82
Total expenses
115,621.33
138,701.83
254,323.16
Net income (loss) to corpus
(17,760.77)
147,605.43
129,844.66
Fiscal Year ended June 30, 1956
Total income
$101,031.40
$272,028.21
$373,059.61
Total expenses
130,742.69
140,824.90
271,567.59
Net income (loss) to corpus
(29,711.29)
131,203.31
101,492.02
Fiscal Year ended June 30, 1957
Total income
$110,681.38
$271,848.45
$382,529.83
Total expenses
129,732.23
138,103.55
267,835.78
Net income (loss) to corpus
(19,050.85)
133,744.90
114,694.05
The income classified under corpus for the fiscal years ended June 30, 1955, 1956, and 1957, consisted primarily of royalties, *213 the other income being from oil and gas lease bonuses, delay rentals, and grass leases, and in the year 1955, $598.20 from surface rental and damages and $86.39 of miscellaneous income. The income classified under distributable income consisted primarily of gross profit on commercial cattle and breeding cattle and a small amount of dividends income; in 1955 there were included small amounts of gross profit on [a] horse sale, miscellaneous income, and interest - U.S. Treasury Tax Recovery; and in 1956 and 1957, interest income was included. In each of its fiscal years ended June 30, 1955, 1956, and 1957 the trust charged as an expense against distributable income an amount of $15,000 designated "Brad Love Sneed" distribution. All of the income classified as corpus was received by the trust from lands owned by decedent at the time of his death. The royalties were received both from leases made by decedent prior to his death and from leases made by the executors subsequent to decedent's death on lands owned by him at the date of his death. The proceeds received by the trustees which were considered by them as corpus were deposited in a separate bank account from the proceeds which *214 they considered as distributable income. None of the distributions to Brad Love Sneed in the taxable years here involved was made from the funds consisting of receipts which the trustees considered to constitute corpus. The proceeds which the trustees considered to be corpus were to some extent invested during the 1950's in stocks and bonds and were also cumulated and used in 1958 for the purchase by the trust of a ranch in Hartley County, Texas, for approximately $500,000. The assets of the estate of Zella Sneed at the time of her death had a value of approximately $175,000. Her will provided for a monthly payment of $50 to her sister for life and at the date of her sister's death equal division of the estate between her husband, J. T. Sneed, Jr., and petitioner, or if either of them did not survive her that the total be paid to the survivor. Paragraph 7 of the will of Zella Sneed provided as follows: I desire and direct that my Executors shall, as rapidly as can be done in the exercise of their judgment convert the personal property of my estate into cash, or into bonds and for securities of such nature as they shall deem advisable. All such cash, bonds and/or securities, as *215 well as monies derived from royalties and leases of oil and gas lands, lease and sale of lands, or from whatever source obtained, which shall come into the hands of my said Executors, shall be held, managed, invested and reinvested by them, and after payment of taxes, fixed charges, operating expenses, and the expense of administration, and after payment of the special bequest hereinabove provided in paragraph 4, I desire and direct that the remaining portion of the annual net income from my estate shall be divided and paid equally to my husband, J. T. Sneed, Jr., and my daughter, Elizabeth Sneed Pool, should they both survive me; * * * Petitioner and J. T. Sneed, Jr., qualified as executors of the estate of Zella Sneed in November 1935. The administration of the estate was completed in 1939, and the estate thereafter was operated as a trust. From 1938 the income of the estate of Zella Sneed consisted of royalties and other proceeds from the land owned by her at the time of her death. The books, records, and returns of the estate of Zella Sneed reflect no distributions to J. T. Sneed, Jr. By deeds dated November 19, 1935, and May 15, 1936, decedent, J. T. Sneed, Jr., gave petitioner *216 more than 8,300 acres of land, an undivided one-half of the oil, gas, and other mineral interests under another 1,600 acres, and an undivided one-fourth of the oil, gas, and other mineral interests under an additional 4,639 acres. Gifts were made by decedent to Brad Love Sneed by conveyances in 1938 and 1939 of certain lots in Amarillo and an undivided one-half of the mineral interests under two sections of land. For the years 1953 and 1954 the trust estate claimed depletion with respect to the total royalties received, and for these same years Brad Love Sneed claimed depletion with respect to her annual $15,000 distribution from the trust estate. On August 13, 1958, respondent issued a statutory notice of deficiency to the trust disallowing depletion deductions for its fiscal years 1953 and 1954 on the basis that the amount of depletion with respect to the $15,000 was allocable to the trust beneficiary, Brad Love Sneed, and on the same day issued a notice of deficiency to Brad Love Sneed for the calendar years 1953, 1954, and 1955, disallowing to her the claimed deduction for depletion with respect to the $15,000 with the explanation that it had not been shown that the $15,000 *217 income was of a type subject to a depletion allowance, or that she was entitled to claim an allocable portion of any depletion allowance to be deducted from royalty income to be received by the trust estate. Brad Love Sneed filed a petition with this Court requesting a redetermination of the deficiencies asserted by respondent, and the trust estate paid the asserted deficiencies and filed a claim for refund thereof which was disallowed after which it filed complaints with respect to each year in the United States District Court, Northern District of Texas, Amarillo, Texas. The petition filed in this Court by Brad Love Sneed resulted in a decision sustaining respondent's determination, Brad Love Sneed, 34 T.C. 477 (1960). On April 17, 1961, upon the plaintiff's motion an order of dismissal with prejudice was entered in each case in the United State District Court, Northern District of Teaxs, each order reciting that full payment of the amount claimed by plaintiffs in their complaint had been made, such payment being the amount agreed upon in settlement of the controversy. Petitioner and her husband reported adjusted gross income on their joint income tax returns for *218 the calendar years 1955, 1956, and 1957 in the respective amounts of $90,635.42, $85,728.88, and $86,493.17. Respondent in his notice of deficiency added to petitioner's reported income for the taxable years 1955, 1956, and 1957 the respective amounts of $132,670.27, $97,746.57, and $103,816.16 with the explanation that it was determined that petitioner was the life beneficiary and entitled to the distributable net income of the trust estate of J. T. Sneed, Jr., deceased, and that her returns omitted taxable income in the amounts stated, the computation of which was shown to be the amount determined by respondent to be the net income of the trust for its respective fiscal years ending in petitioner's calendar years. Opinion Section 651 of the Internal Revenue Code of 1954[1] provides for the deduction by a trust of income which is required to be distributed currently to the extent of the distributable net income of the trust for the taxable year and section 652 requires the inclusion in the beneficiary's income of the amount for the taxable year required to be currently distributed by the trust as described in section 651 whether distributed or not, to *219 the extent of distributable net income of the trust. Section 643(a) defines distributable net income of an estate or trust and section 643(b) provides that for the purposes of sections 651 and 652 the term "income" when not preceded by the words "taxable," "distributable net," "undistributed net," or "gross" means the amount of income of the estate or trust for the taxable years determined under the terms of the governing instrument and applicable local law. Insofar as the instant case is concerned this requires that a determination be made whether the income of the trust estate of J. T. Sneed, Jr., as determined under the terms of the decedent's will and the Texas law, includes income from oil royalties, delay rental payments, and other leases with respect to lands owned by decedent at the date of his death so that these amounts constitute distributable income of the trust as contended by respondent, or includes only income derived from investments of the conversion of personalty in his estate at the date of his death and the proceeds received from the royalties and rentals of lands owned *220 at the date of his death as petitioner contends. For the taxable years here in issue, the evidence shows that there were no lands in the trust estate that had been acquired subsequent to the date of decedent's death. Petitioner contends that this precise issue was decided with respect to the precise will here involved in Brad Love Sneed, supra, and that this decision is controlling of the issue here involved. Petitioner does not take the position that the doctrine of res judicata or collateral estoppel is applicable because of the decision in Brad Love Sneed, supra, since she recognizes that the parties involved in that case are not the same as the parties in the instant case. She does, however, argue that under the theory of estoppel against inconsistency in judicial proceedings, a phase of equitable estoppel, respondent having been the successful litigant in Brad Love Sneed, supra, should be bound in the instant proceedings by the holding of this Court therein. Respondent contends that the precise issue involved in the instant case was not presented in Brad Love Sneed, supra, the only issue in that case being the amount of income of Brad Love Sneed allocable to royalties with *221 respect to which depletion was allowable. He therefore denies that the decision in Brad Love Sneed, supra, is controlling as a matter of law in the instant case or that he is estopped from contending in the instant case that the distributable income of the trust estate of J. T. Sneed, Jr., included royalties and other payments with respect to land owned by decedent at the date of his death. He argues that the pleadings and his brief in the case of Brad Love Sneed, supra, which are part of the evidence in the instant case support his position in this regard. [2]
*222 From the lengthy quotation in the margin of the findings and opinion in Brad Love Sneed, supra, we think it clear that the decision therein was that Brad Love Sneed was not entitled to a depletion deduction since the oil and gas royalties received by the trust estate did not constitute distributable income of the trust estate. This holding does not prevent respondent from again raising the precise issue in the instant case and relying on facts and arguments not considered in Brad Love Sneed, supra, unless as petitioner contends, he is estopped from so doing under some theory of equitable estoppel or rule against inconsistency in judicial proceedings. Petitioner herein was not a party to the Brad Love Sneed case which is generally a requirement of estoppel against inconsistent judicial positions, Jamison v. Garrett, 205 F. 2d 15 (C.A.D.C., 1953), and has made no showing that she in any way relied upon the position taken by respondent in that case, another requirement generally recognized in applying this doctrine. Galt v. Phoenix Indemnity Co., 120 F. 2d 723 (C.A.D.C., 1941). The cases which have held a party to be estopped from taking an inconsistent *223 position in judicial proceedings where there was not identity of parties have involved clearly inconsistent positions for the advantage or unjust enrichment of the party practicing such inconsistency. Queenan v. Mays, 90 F. 2d 525 (C.A. 10, 1937), and Hatten Realty Co. v. Baylies, 290 P. 561 (Wyo. 1930). Cf. Scarano v. Central R. Co. of New Jersey, 203 F. 2d 510 (C.A. 3, 1953). We have set forth in the margin statements contained in the pleadings of the parties in Brad Love Sneed, supra, sufficient to show that each party in that case did state at some point that the issue therein was confined to whether any portion of the payment by the trust estate to the taxpayer therein was properly attrributable to income subject to a depletion allowance. Respondent's position therein is not clearly inconsistent with his position herein nor is there any element of unfair advantage or unjust enrichment to respondent created by the position he is taking in the instant case. We hold that respondent is not estopped in the instant case from taking the position that the entire income of the trust estate of J. T. Sneed, Jr., is distributable income which petitioner *224 is required to include in her income under section 652. Cf. Sam Schnitzer, 13 T.C. 43, 55-56 (1940), affd. 183 F. 2d 70 (C.A. 9, 1950), certiorari denied 340 U.S. 911 (1951). Respondent argues that since the lands owned by decedent were in production of oil at the date of his death, the royalties and bonuses from leases on this land are distributable income of the trust and not to be added to the trust corpus. While it is well settled in Texas that an oil and gas lease constitutes a real property interest, Davis v. Atlantic Oil Producing Co., 87 F. 2d 75 (C.A. 5, 1936), and San Antonio Loan & Trust Co. v. Hamilton, 283 S.W. 2d 19, 27 (Sup. Ct., Tex., 1955), it is also a recognized principle of Texas law that in the case of a statutory life estate or absent a provision to the contrary in a will or testamentary trust, royalties from leases executed prior to and producing leases at the date of death of the decedent whose estate is involved go to the life beneficiary. Thompson v. Thompson, 236 S.W. 2d 779 (Sup. Ct., Tex., 1951); Youngman v. Shular, 281 S.W. 2d 373 (Civ. App., Tex., 1955); and *225 Hickock v. Gulf Oil Corp., 265 F. 2d 798 (C.A. 6, 1959). The underlying theory of this rule is that after the well is opened the royalties therefrom become the "annual profit of the land." White v. Blackman, 168 S.W. 2d 531 (Civ. App., Tex., 1943). This doctrine known as the "open mine" or "open well" rule does not apply to make royalties or bonuses income to the life beneficiary where a will or other written instrument creating the interests involved indicates the intention of the decedent that royalties from leases in existence at the date of his death are intended to be a part of the corpus. Mitchell v. Mitchell, 303 S.W. 2d 352 (Sup. Ct., Tex., 1957). Cf. St. Marks Episcopal Church, Mt. Pleasant, Tex. v. Lowry, 271 S.W. 2d 681 (Civ. App., Tex., 1954) wherein the intent of the decedent was held to take precedent over the provisions of the Texas Trust Act, Tex. Civ. Stat. (Vernon Annotated, 1943), Art. 7425b-33, providing that absent a specific provision in the trust instrument, 27 1/2 percent of royalties shall be considered as corpus.[3]
*226 In Brad Love Sneed, supra, we held that the decedent's will explicitly directed the retention of royalties in the trust estate. The evidence in the instant case showing that decedent as an executor of Zella Sneed's will apparently interpreted a similar provision to require oil royalties and bonuses to be added to the trust corpus and that he made gifts to his daughter, petitioner herein, and his wife, Brad Love Sneed, prior to his death, support the interpretation that the intent of his will was to require that the royalties and bonuses from oil leases be added to the corpus of the trust estate. In determining a decedent's intent as expressed in his will in Texas, the surrounding circumstances such as the other provisions which had been made by the testator for the income beneficiaries are considered. Mitchell v. Mitchell, 244 S.W. 2d 803 (Sup. Ct., Tex., 1951). Upon consideration of all the evidence herein and all contentions of the parties, we hold as we did in Brad Love Sneed, supra, that the income of the trust estate of J. T. Sneed, Jr., from royalties, bonuses, and rentals from lands owned by decedent at the date of his death is not distributable income. *227 Decision will be entered for petitioner. Footnotes
1. Unless otherwise indicated, all references are to the Internal Revenue Code of 1954.↩
2. The amended petition in Brad Love Sneed, supra, alleges: f. In the case of Brad Love Sneed, T.C. Memo. Decision, Docket No. 27716, 12 T.C.M. 711, citing and relying upon Sneed v. Pool, supra, this Court held that petitioner was entitled to a depletion deduction with respect to monies received by her in 1942 and 1943 from the estate of her said late husband under the provisions of Section 23(m) of the Internal Revenue Code of 1939. The payments referred to were those made under the codicil to the will of petitioner's late husband. This allegation was denied by respondent in his answer thereto. A motion for leave to intervene was filed in Brad Love Sneed, supra, by the trust estate of J. T. Sneed, Jr., which was opposed by respondent and denied by the Court. The attorney for the trust estate of J. T. Sneed, Jr., filed a brief amicus curiae after the trial in Brad Love Sneed, supra. The taxpayer in the Brad Love Sneed case filed a motion to strike this brief in which the following appears: At the time of the hearing on the motion of petitioner for intervention to intervene, immediately preceding the trial of this cause, counsel for the respondent stated: On one further point, I think that the intervening petitioner errs in its arguments in one respect and that is that it feels that this case presents a possibility of opening up the question of whether or not the petitioner in this case is entitled to an allocable share of the depletable income of the trust estate in the event such amount is shown. Respondent takes the position that that case, that position was decided by this Court in the case of Brad Love Sneed in a prior hearing on this same issue in 1953 before, I believe, Judge Turner. In that case the Tax Court, let me regress, the respondent argued very much the same position which we feel the intervening petitioner is taking in this action, and the Government decided against us on that and we have acquiesced in that position. We feel bound in that regard by that decision and the question that we have presented here goes to one of amount and not as to one of whether or not the petitioner is entitled to an allocable share of depletable income but what is the amount of that allocable share. In that regard, I direct my remarks to the intervening petitioner's remarks of stare decisis. It seems to me that if stare decisis plays a part in this case, then they are bound by the prior Brad Love Sneed case, and the Government in this case, the respondent in this case, is relying upon that prior decision, and insofar as the deficiency notice seeks to disallow the depletion allowance to this petitioner on the ground that he was not entitled or she was not entitled to an allocable share of depletable income to the trust, we are conceding that part and are relying solely upon the question of amount and the burden of proof of showing what that amount was. We have not been able to determine that. Previous to the hearing on this motion, counsel for both the petitioner and the respondent in this case had agreed, as indicated above, that the amount of the depletion deduction available to the petitioner in this suit was the sole issue before the Court and, having so agreed, both parties amended their pleading to thus limit the issue before the Court. Petitioner, in direct reliance upon such accord between counsel for the petitioner and counsel for the respondent, directed his proof in this matter solely to the question of the amount of the depletion deduction allocable to petitioner and conducted his activities in the trial on the presumption by both counsel of record that the case was controlled by a prior decision of this Court, to-wit: Brad Love Sneed, 12 T.C.M. 711. * * * After the opinion was rendered and decision entered in Brad Love Sneed, supra, the taxpayer filed a motion for further consideration in which the following appears: * * * The Court's memorandum opinion in the prior case was entered on June 23, 1953 with reference to the payments made in the years 1942 and 1943 and is reported at 12 CCH T.C.M. p. 711. The controlling effect of the prior case can be readily determined by referring to the memorandum findings of fact and opinion in that case. Judge Turner states one of the questions involved in the case as: "* * * (2) whether petitioner is entitled to deduct statutory percentage depletion on a portion of the $15,000 paid to her, pursuant to a codicil attached to the will of J. T. Sneed, Jr., in each of the years 1942 and 1943 by the J. T. Sneed, Jr., trust estate;" Judge Turner's conclusion that petitioner was entitled to an apportionment of the depletion deduction was succinctly stated in the following portion of the opinion: "As petitioner is an income beneficiary and the pertinent provisions of the trust instrument do not direct whether the trustee or the beneficiaries shall be allowed the depletion deduction, she is entitled to an apportionment of the depletion allowance. William Fleming, Trustee, 43 B.T.A. 229, affd. (C.A. 5, 1941) 121 F. 2d 7. She is entitled, however, to only such portion of the depletion allowance as is indicated by her proportion of the trust income. Sada G. Wilson Blake, supra." The amount of depletion allowed to petitioner for those years was approximated under the Cohan rule and, due to petitioner's failure to prove depletable income for those years, she was held to be entitled to a depletion deduction of only $100.00 for each of the two years involved in that case. Judge Turner's comments on the application of the Cohan rule were as follows: "Respondent does not claim that the trust did not have income in 1942 and 1943 from oil and gas royalties and bonuses. His position is that 'petitioner has offered no proof showing any relationship between the amounts paid by the estate to petitioner and the amount of royalties, bonuses and other income subject to depletion which was received by the estate.' In such posture of the case we should assume, we think, that some portion of the annuities received by petitioner in 1942 and 1943 was derived from depletable assets of the trust, and in the absence of proof with respect thereto the Cohan rule is applicable not only as to the source of the trust's income as petitioner argues, but also with respect to the ratable interests of petitioner and the residuary income beneficiary in the trust's income. It thus appears that after the rule is applied in arriving at the amount and source of income received by the trust, the rule must again be applied in order to determine the percentage of the allowance that is allocable to the respective interests. We do not know, however, whether much or little of the trust income for the years in question was from oil, nor do we know whether much or little of such trust income was required in payment of the $15,000 annuity to petitioner. In short, the amount of the depletion deduction allowable in respect of the income from the depletable property of the trust estate has not been shown. "Bearing heavily against petitioner because she has failed to meet her burden of proof as to amount, but determining the matter as best we can, from the evidence before us which merely is that some amount of trust income was from depletable property, we have concluded and found as a fact that petitioner has an allowable depletion deduction in the amount of $100 for each of the taxable years 1942 and 1943." The payments made to petitioner for the years 1953, 1954 and 1955 were made by the same payor and, under the same codicil of the will of J. T. Sneed, Jr. as were the payments in 1942 and 1943. A prior decision of this Court has already determined that petitioner was entitled to an apportionment of the depletion deduction for the years 1942 and 1943 and, under the doctrine of collateral estoppel, that question was no longer open for decision in the current case. Charles P. Leininger, 29 B.T.A. 874 (1934); Jacob's Fork Pocahontas Coal Co., 24 T.C. 60 (1955). As the respondent acknowledged the question for decision in the current case is not whether or not petitioner is entitled to depletion, but rather the amount of the depletable income so that an allocation of the depletion deduction can be made. In Brad Love Sneed, 34 T.C. 477, 479 (1960) we found: As an outcome of certain proceedings brought by petitioner against the executors and trustees of decedent's estate against the executors and trustees of decedent's estate in the case of Sneed v. Pool, 228 S.W. 2d 913, the Court of Civil Appeals at Amarillo, Texas, sustaining the District Court below, held that the amounts annually payable to petitioner were payable out of gross income and that petitioner was liable for any and all tax upon such distributions. In the case of Sneed v. Commissioner, 220 F. 2d 313, affirming this Court in the case of Estate of J. T. Sneed, Jr., 17 T.C. 1344, and the case of Brad Love Sneed, Memorandum Opinion of this Court, the United States Court of Appeals for the Fifth Circuit held that a determination of the Court of Civil Appeals, Amarillo Division, in the case of Sneed v. Pool, supra, that moneys distributable to petitioner pursuant to the terms of codicil to the will of decedent constituted income to her, was controlling. * * *
The trustees of the trust estate interpreted the will and codicil of decedent to require the income from oil and gas royalties and bonuses to be treated as corpus and not distributable under the terms of the will but should be accumulated for the benefit of the remaindermen. Thus, interpreting the will, the trust estate had two bank accounts. In one of them, income from the cattle business and other sources was deposited; in the other bank account, income from oil and gas royalties and bonuses was deposited. The payments made to petitioner were made from the first-named bank account. That fact is firmly established. But it is the argument of petitioner that there was no requirement in the will and codicil that oil and gas bonuses and royalties should be treated as corpus and accumulated for the benefit of the remaindermen and therefore the interpretation of the trustees was wrong and the mere fact that the payments to petitioner were made out of a bank account where no oil and gas royalties had been deposited could not interfere with petitioner's right to her allocable part of depletion deductions under section 23(m), 1939 Code, and section 611(b)(3), 1954 Code. Petitioner claims that her allocable part of the depletion under the statutes named for each of the taxable years is as follows: Year
Amount
1953
$3,007.60
1954
3,015.35
1955
2,887.23 She now claims these deductions for depletion instead of the somewhat larger deductions which she took on her returns. We think that if the interpretation given the will and codicil by the trustees was wrong, petitioner would be right in her argument that she could not be deprived of her allocable part of the depletion deduction merely because the payments made to her were out of a certain particular bank account. However, we do not think the trustees were wrong in their interpretation of the will and codicil. The term "allocable" used in section 23(m), 1939 Code, has been construed to mean "distributable," Fleming v. Commissioner, 121 F. 2d 7 (C.A. 5, 1941). Therefore, in order for petitioner to be entitled to an allocable part of the percentage depletion deduction she must establish that the royalties and bonuses are distributable to her in part under the terms of the will and codicil of the decedent, the governing trust instrument. We do not think that petitioner has established such a fact. The rules followed in Texas in construction of a testamentary trust on the precise issue of whether oil and gas royalties are corpus to be retained for the remaindermen or income distributable to life beneficiaries have been set forth by the Supreme Court of Texas in its two opinions in Mitchell v. Mitchell, 303 S.W. 2d 352 (1957), 244 S.W. 2d 803 (1952). The Supreme Court of Texas held in both opinions that the intention of the testatrix was controlling in the construction of her will. Her intent was determined from construction of the will as a whole, circumstances surrounding the execution of the will, and knowledge imputed to the testatrix of decisions in Texas defining the meaning of the legal terms used in the will. Applying these rues of construction, the Supreme Court in the Mitchell case held it was the intent of the testatrix that royalties were to form a part of the corpus of the trust estate. The will of decedent explicitly directs the retention of royalties in the trust estate for management and investment in the following paragraph: FOURTH: 1. I desire and direct that my Executors shall as rapidly as can be done after my death, in the exercise of their sound discretion, convert the personal property of my estate into cash or into bonds, and other securities of such nature as they shall deem advisable. All such cash, bonds and/or securities as well as all moneys derived from royalties, rentals and leases of oil and gas lands, rentals, lease and sale of lands, or from whatever source obtained which shall come into the hands of my said Executors, shall be heid, managed invested and reinvested by them, and after payment of taxes, fixed charges, operating expenses and the expenses of administration, my said Executors shall then pay over the net income from my said estate to my daughter, Elizabeth Sneed Pool during her lifetime, should she survive me. * * * In effect, an investment trust is thereby created. Designated to be retained for management and investment are the proceeds from the conversion of personalty and all moneys received from the decedent's lands, whether from royalties, leases, rentals sales, or whatever source. The proceeds themselves are not to be distributed. Only the income arising from the management and investment of the proceeds is to be distributed. Of course, it goes without saying that the income from bonuses and oil royalties represents taxable income, reduced by depletion deductions but that income was taxable to the trust estate and not to petitioner and the estate is the one which is entitled to the depletion deduction. Income from bonuses and royalties, for reasons we have already stated, was not distributable income under the terms of the will and we do not see where petitioner is entitled to any depletion deduction on the payments which she received.↩
3. The provisions of this statute have been held not to be applicable to transactions which occurred prior to its enactment, Garcia v. Garcia De Ortiz, 258 S.W. 2d 804, 807↩ (Civ. App., Tex., 1955), and therefore are not involved in the instant case since decedent herein died in 1940.